UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

**CIVIL ACTION NO. 10-205-DLB**

**RICKY D. ADAMS**     **PLAINTIFF**

vs.     <u>**MEMORANDUM OPINION & ORDER**</u>

**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**     **DEFENDANT**

\*   \*   \*   \*   \*   \*   \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration. (Doc. # 1). The Court, having reviewed the record and the parties' cross-motions for summary judgment (Docs. # 8, 9), **affirms** the Commissioner's decision because it is supported by substantial evidence.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Ricky D. Adams filed an application for disability insurance benefits (DIB) and supplemental security income (SSI) on August 15, 2006. (Tr. 133-40). At the time, Plaintiff was forty-five (45) and alleged a disability onset date of August 1, 2005. (Tr. 57, 133, 138, 156).

Plaintiff's claim was denied initially and upon reconsideration. (Tr. 84-88, 95, 98). At Plaintiff's request, Administrative Law Judge (ALJ) Donald C. Paris conducted a hearing

1

on March 12, 2008.[1] (Tr. 6-51, 103). The ALJ issued an unfavorable decision on April 19, 2008, finding that Plaintiff could perform past relevant work and, therefore, was not disabled. (Tr. 63-64). This became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 20, 2010. (Tr. 1-3). Plaintiff filed this action seeking judicial review on June 19, 2010. (Doc. # 1).

## II.  DISCUSSION

### A.  OVERVIEW OF THE PROCESS

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court is to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because

---

[1] As the Commissioner notes (Doc. # 9 at 1-2 n.1), the first page of the hearing transcript indicates that the hearing took place March 12, 2009 (Tr. 6) though all other references confirm that it actually took place March 12, 2008 (Tr. 8, 51, 57).

substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

### B. THE ALJ'S DETERMINATION

In determining disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant still performs substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listings of Impairments; Step Four, whether the claimant can still perform past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy which the claimant can perform. 20 C.F.R. § 416.920; *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing 20 C.F.R. § 404.1520). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (internal citations omitted).

At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 1, 2005, the alleged onset date. (Tr. 59). At Step Two, the ALJ determined that Plaintiff has the severe impairment of degenerative disc disease of lumbar spine with chronic back and hip pain. (Tr. 59). At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 61). Specifically, the ALJ determined that no treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment. (Tr. 61).

3

At Step Four, the ALJ found that Plaintiff has the residual functional capacity (RFC)

> to perform light exertional work, occasionally lift/carry 20 pounds, and frequently lift/carry 10 pounds; only occasionally push/pull with lower extremities; only occasionally climb stairs/ramps; never climb ladders/ropes/scaffolds; only occasional stooping, kneeling or crouching; never crawling; he should avoid concentrated exposure to full body vibration, and because of his medications he should avoid hazards such as unprotected heights and dangerous machinery.

(Tr. 61).

Based on this RFC and testimony from the vocational expert (VE), the ALJ concluded that Plaintiff was capable of performing past relevant work as a pharmacy technician/counter clerk at Wal-Mart because this work does not require performance of work-related activities precluded by his RFC. (Tr. 63). The VE also testified that there are other jobs that a hypothetical individual with Plaintiff's RFC could perform. (Tr. 63-64). Accordingly, the ALJ found that Plaintiff has not been under a disability as defined by the Social Security Act since August 1, 2005. (Tr. 64).

### C.   ANALYSIS

Plaintiff advances three issues on appeal. First, Plaintiff argues that the ALJ erred in rejecting the opinion of the treating physician, Dr. Patel, and failed to provide good reasons for doing so. Second, Plaintiff contends that the ALJ omitted restrictions from his chosen hypothetical, which rendered the VE's responsive testimony inapplicable. Third, Plaintiff avers that the ALJ violated Agency regulations in improperly relying on the assessment of an uncredentialed Agency employee. The Court addresses these arguments in order and, finding them without merit, affirms the ALJ's decision.

### 1.   **The ALJ properly rejected the opinion of the treating physician, Dr. Patel, and gave good reasons for doing so.**

4

Plaintiff first argues that the ALJ improperly rejected the opinion of his treating physician, Dr. Panna Patel, and failed to give good reasons for doing so. (Doc. # 8-1 at 8-10). Defendant responds that the ALJ considered Dr. Patel's opinion but ultimately rejected it, and gave good reasons for doing so. (Doc. # 9 at 9).

As Plaintiff's treating physician,[2] Dr. Patel's assessment is entitled to controlling weight "unless it is either not 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' or is 'inconsistent with the other substantial evidence in the case record.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)). "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Hensley v. Astrue*, 573 F.3d 263. 266 (6th Cir. 2009) (citations omitted). "Even if the treating physician's opinion is not given controlling weight, 'there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference.'" *Id.* (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)). The Social Security Administration "promises claimants that it 'will always give good reasons in its notice of determination or decision for the weight it gives the claimant's treating source's opinion.'" *Smith*, 482 F.3d at 875 (quoting 20 C.F.R. § 404.1527(d)(2)).

---

[2] Plaintiff refers to Dr. Patel as his treating source. A treating source is Plaintiff's "own physician, psychologist, or other acceptable medical source who provides [Plaintiff], or has provided [Plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [Plaintiff]." 20 C.F.R. § 404.1502. The Commissioner does not object to this characterization, but argues only that the ALJ gave good reasons for discounting the treating physician's assessment.

5

Dr. Patel was Plaintiff's treating physician at the Department of Veterans Affairs (VA) from 2006 through 2008. (Tr. 253, 429). In January 2007, Dr. Patel completed a Physical Capacities Evaluation (PCE) in which he diagnosed Plaintiff as having bilateral shoulder dislocations, right ankle tenderness, chronic back pain, and compression fractures of L2, and L4-5 with sublaxation. (Tr. 334-35). Dr. Patel also identified a number of objective signs of Plaintiff's symptoms and assessed a poor prognosis for improvement. (Tr. 334). Dr. Patel opined, in summary, that "[u]nder no circumstance do I believe from a medical standpoint that [Plaintiff] is able to perform <u>any</u> work duties without further worsening his outcome." (Tr. 335). Accordingly, Dr. Patel concluded that Plaintiff "is a strong candidate for permanent disability based on chronic medical conditions." (Tr. 335).

The ALJ considered—and rejected[3]—Dr. Patel's opinion. (Tr. 63). The ALJ explained that he did so because he found it "inconsistent with the examinations and evaluations at VA and the finding of a recent orthopedic CE [consultative examination] in October 2006."[4] (Tr. 63). The CE was conducted by a consulting physician, Dr. Duncan, who summarized Plaintiff as a middle-aged man who

---

[3] Plaintiff argues that *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 246 (6th Cir. 2007) requires remand because the Sixth Circuit there required the ALJ to articulate "not just why these [treating] opinions do not warrant controlling weight, but should also explain what weight was given the treating opinions." (Doc. # 10 at 9). In *Rogers,* the ALJ concluded only that "the record does not support the limitations of the severity suggested by" the treating physician. *Id. Rogers* is distinguishable from this case because here the ALJ explicitly "reject[ed]" the opinion of Dr. Patel, and gave good reasons for doing so. (Tr. 63). That is, unlike *Rogers*, there is no question here about what weight the ALJ assigned Dr. Patel's assessment.

[4] The ALJ also observed that "in a VA treatment note dated September 2006 . . . the claimant was examined by a neurosurgeon and deferred surgery unless worsening nerve involvement." (Tr. 63). Though Plaintiff has not subsequently had surgery, the same treatment note indicated that the pain had gotten "[p]rogressively worse since" he deferred surgery. (Tr. 254). At his administrative hearing, Plaintiff indicated that he was still deferring surgery until his symptoms worsened, and noted that he was under a "911 alert," such that he would need emergency surgery if he lost control of his bodily functions. (Tr. 22-23).

6

> ambulates with a normal gait but had difficulty forward bending at the waist. There are no joint abnormalities as heat, swelling and capsule thickening are absent. There is no evidence of nerve root damage as all deep tendon reflexes are brisk, and there is no evidence of muscle atrophy. Muscle strength is 5/5 throughout. Range of motion studies were essentially good with some compromise in hip range of motion secondary to back pain.

(Tr. 268).

Based on his orthopedic examination, Dr. Duncan concluded that "the patient appears capable of performing a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. In addition, the patient has no difficulty reaching, grasping, and handling objects." (Tr. 268).

As the ALJ determined, Dr. Duncan's and Dr. Patel's conclusions are inconsistent. Dr. Patel found that Plaintiff is only able to sit, stand, and walk for less than two (2) hours in an eight-hour work day (with normal breaks). (Tr. 335). Dr. Duncan, by contrast, found that Plaintiff was capable of performing a mild to moderate amount of sitting, ambulating, and standing. (Tr. 268). Dr. Patel opined that Plaintiff can occasionally lift and carry less than five (5) pounds, but can never lift and carry five (5), ten (10), or twenty (20) pounds. (Tr. 335). Dr. Duncan, however, stated that Plaintiff could perform a mild to moderate amount of lifting and carrying heavy objects. (Tr. 268). Moreover, Dr. Patel concluded that Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl (Tr. 335), while Dr. Duncan found that Plaintiff could perform a mild to moderate amount of kneeling and bending. (Tr. 268). Lastly, Dr. Patel determined that Plaintiff's impairments affected his ability to reach, handle, feel, push, and pull (Tr. 335), while Dr. Duncan found Plaintiff had no difficulty reaching, grasping, and handling objects. (Tr. 268). Though not directly contradictory, as documented above, Dr. Patel's and Dr. Duncan's assessments are plainly inconsistent.

7

Plaintiff correctly argues that Dr. Duncan's opinion "cannot provide a sufficient basis for rejecting the opinion[] of plaintiff's treating physician[] since 'the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" (Doc. # 10 at 4), *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (quoting *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)). In this case, however, additional, substantial evidence in the record is inconsistent with Dr. Patel's assessment and supports the ALJ's decision to reject it.[5]

First, Dr. Patel's January 2007 PCE indicated that Plaintiff had an abnormal gait and posture, which constituted objective signs of his symptoms. (Tr. 334). However, medical records from a VA staff physician approximately four months earlier stated that Plaintiff had normal ambulation (Tr. 257), which was confirmed by Dr. Duncan's CE in January 2007, which recorded that Plaintiff "ambulates with a normal gait." (Tr. 267). Second, though Dr. Patel indicated that Plaintiff should use a cane or other assistive device while standing or walking (Tr. 334), Dr. Duncan's assessment stated that Plaintiff was able to ambulate normally "without the use of ambulatory aids." (Tr. 267). As the Commissioner points out, neither Dr. Patel nor any other physician prescribed a cane for Plaintiff—though it is noteworthy that Plaintiff brought a cane to his administrative hearing. (Doc. # 9 at 10; Tr.

---

[5] Plaintiff's response brief emphasizes that applicable regulations require the ALJ to consider a series of factors in determining the weight to assign the treating physician's assessment (if the assessment is not given controlling weight) (Doc. # 10 at 2-4) (citing 20 C.F.R. §§ 404.1527(d), 404.416.927(d)). Plaintiff's brief, however, fails to apply these factors to the facts of this case, aside from making conclusory statements that the factors weigh in favor of Dr. Patel's assessment. For example, Plaintiff states that "[t]he medical records in this claim evidence both the supportability of the medical source statement provided by Dr. Patel and its consistency with the record as a whole." (Doc. # 10 at 4). Plaintiff does not, however, offer evidence in support. By contrast, the ALJ's decision explains that he rejected Dr. Patel's assessment because it is internally inconsistent, and inconsistent with other record evidence. As documented in Part II.C.1 of this Memorandum Opinion & Order, there are a number of specific pieces of evidence that support these statements. Moreover, consistency "with the record as a whole" is a factor to be considered in determining the weight to give opinion evidence. 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4).

8

23). Third, as noted above, Dr. Patel concluded that Plaintiff could never lift and carry five (5) pounds or more. (Tr. 335). However, nearly a year after that assessment, Plaintiff told Dr. Patel that his pain had worsened because he had "to move/care for his uncle." (Tr. 421). Plaintiff also testified at the administrative hearing that the maximum weight he could lift was "200 or 300 pounds probably"—with the exaggerated caveat that Plaintiff "would die" if he did have to lift that amount. (Tr. 28-29). Finally, notwithstanding Dr. Patel's January 2007 determination that Plaintiff was a "strong candidate for permanent disability" (Tr. 335), Dr. Patel recommended to Plaintiff in May 2007 that he exercise as a method of lowering his triglyceride level.[6] (Tr. 338).

In sum, Dr. Patel's January 2007 assessment is inconsistent with substantial evidence of record—namely Dr. Duncan's assessment, evaluations at the VA, Plaintiff's testimony at the administrative hearing and to Dr. Patel, and Dr. Patel's own subsequent treatment recommendation.[7] In explaining that he rejected Dr. Patel's assessment because it was "inconsistent with the examinations and evaluations at VA and the finding of a recent orthopedic CE," as well as a VA treatment note, the ALJ provided good reasons for his decision. (Tr. 63). Accordingly, Plaintiff's motion for summary judgment on this claim is **denied**, and the Commissioner's is **granted**.

---

[6] The Commissioner also argues that Plaintiff was scheduled to take part in a mission trip abroad, which would indicate a level of activity inconsistent with the limitations Dr. Patel assessed. (Doc. # 9 at 11). The Commissioner fails to point out, however, that Plaintiff did not make the trip "due to pain." (Tr. 403).

[7] Plaintiff also contends that the ALJ's reasons for rejecting Dr. Patel's assessment were not sufficiently specific. (Doc. # 10 at 10). In support, Plaintiff cites *Friend v. Commissioner of Social Security*, 375 F. App'x 543, 551-52 (6th Cir. 2010) in which the Sixth Circuit stated that mere citation to an inconsistent medical opinion was not a sufficiently specific reason to reject the treating physician's opinion. *Friend* is distinguishable from this case, where, as the Court now holds, there are a series of specifically identified inconsistencies that support rejection of the treating physician's assessment.

### 2. The ALJ incorporated all assessed restrictions in his hypothetical to the VE, such that the VE's responsive testimony is substantial evidence.

Plaintiff also alleges that the ALJ's hypothetical to the VE was flawed because it failed to incorporate restrictions that were assessed by agency nonexaminer Dr. Allen Dawson. (Doc. # 8-1 at 9). Specifically, Plaintiff argues that "[t]he ALJ did not advise the VE of Dr. Dawson's opinion that the claimant should be totally restricted from bending." *Id.* As the Commissioner points out, however, Plaintiff provides no supporting citation and review of Dr. Dawson's Physical Residual Functional Capacity (PRFC) assessment reveals no mention of bending. (Doc. # 8-1 at 9; Tr. 322-29). Indeed, the Commissioner correctly observes that the PRFC assessment form used by the Agency's reviewers does not include "bending" as a possible postural limitation. (Doc. # 9 at 12). Accordingly, the Court finds Plaintiff's argument in this respect without merit. Plaintiff's motion for summary judgment on this claim is **denied** and the Commissioner's is **affirmed**.

### 3. The ALJ did not erroneously rely on the PRFC assessments completed by Sheena R. Meade or Dr. Dawson.

Plaintiff also argues that the "Commissioner inaccurately characterize[d] Mrs. [Sheena R.] Meade as a 'medical consultant,' when in fact she is a single decision-maker (SDM) with no medical credentials." (Doc. # 10 at 5). This, Plaintiff asserts, is significant because it "appears that ALJ Paris was unaware of Dr. Dawson's reliance on an SDM." *Id.* Plaintiff points the Court to the Programs Operations Manual System (POMS) which requires that it "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05; (Doc. # 10 at 5-6). Plaintiff

10

concludes that the ALJ's decision "violates agency policy by relying on the state agency's RFC finding, when the reviewing physician appears to have relied primarily on the initial determination which was authored by Sheila [sic] Meade." (Doc. # 10 at 5).

Plaintiff does not provide evidence that the ALJ or Dr. Dawson relied primarily on Meade's PRFC assessment, or that the ALJ was unaware that Dr. Dawson's PRFC referenced Meade's PRFC. The Court's independent review of the ALJ's decision yielded only a single sentence that Plaintiff could have been referring to: "The conclusion that the claimant is not disabled is further supported by the opinions of the State Agency physicians and psychologists who found that the claimant can perform light exertional work activity and that her mental impairment is not severe (Exhibits 7F, 9F, and 10F)." (Tr. 63). Exhibit 7F is the PRFC completed by Meade and Exhibit 10F is the PRFC completed by Dr. Dawson. (Tr. 278, 329). This single sentence from the ALJ, however, does not suggest that he was unaware that Meade was an SDM, or that the ALJ improperly relied on Meade's assessment.

Nowhere in the ALJ's opinion does he suggest that Meade is anything other than an SDM. That the ALJ included "Exhibit 7F" in a list of supporting citations does not suggest that he mistakenly believed Meade was a physician. Instead, the ALJ's inclusion of "Exhibit 7F" was likely an acknowledgment that in Dr. Dawson's PRFC, he specifically "affirmed" the "RFC dated 10/17/06" (i.e., Dr. Dawson affirmed Meade's PRFC). (Tr. 278, 323). Put differently, as Plaintiff acknowledged, an SDM renders initial determinations that medical experts, such as Dr. Dawson, then review. In this case, the medical expert substantially affirmed the SDM, but assessed the additional environmental limitations of avoiding vibrations, hazards, and balancing, while permitting only occasional climbing of ladders,

11

ropes, and scaffolds. (Tr. 324-26, 273-75). That the ALJ cited both PRFC assessments to support his determination that Plaintiff is not disabled does not suggest that the ALJ was unaware that Meade was an SDM; it merely reflects the fact that Dr. Dawson's PRFC affirmed Meade's PRFC.[8]

Plaintiff's final argument in this vein is that the ALJ was not permitted to rely on either SDM Meade's or Dr. Dawson's PRFC assessment to reject a treating source's opinion. (Doc. # 10 at 6). Plaintiff emphasizes that Dr. Dawson's assessment does not satisfy the criteria to be entitled to greater weight than the treating physician's opinion.[9] This argument does not fairly reflect the ALJ's decision, which rejected Dr. Patel's assessment for the reasons discussed *supra* Part II.C.1—specifically because it was inconsistent with Dr. Duncan's opinion, portions of Plaintiff's testimony at the administrative hearing, with VA treatment records, and with Dr. Patel's own subsequent treatment recommendations—not on account of Meade's or Dr. Dawson's PRFC assessment.

---

[8] It is also notable that SDM Meade complied with the requirements of POMS DI § 24510.05, which states that "only MCs [medical consultants] should select 'THESE FINDINGS COMPLETE THE MEDICAL PORTION OF THE DISABILITY DETERMINATION' block" of the PRFC form. The regulation also states that "SDMs should not make an entry in" the block labeled "MEDICAL CONSULTANTS'S CODE." Meade complied with both these requirements, which minimizes the likelihood of confusion. (Tr. 278). By contrast, Dr. Dawson did select the block confirming that his findings completed the medical portion of the disability determination and included his medical consultant's code. (Tr. 329).

[9] Plaintiff also makes the related argument that "[r]eliance on Dr. Dawson is particularly troubling here, because he never saw the [P]CE by the treating doctor at the Veterans Administration, and his primary source of information was an uncredentialed agency employee, whose opinion is, according to agency policy, to be given no weight at the hearing level." (Doc. # 10 at 6). Though it is true that Dr. Patel's PCE was issued shortly after Dr. Dawson's PRFC assessment, Plaintiff does not provide evidence that Dr. Dawson's primary source of information was Meade's PRFC assessment. Indeed, the Commissioner suggests it was not in arguing that Dr. Dawson's PRFC was based on a "review[] of Plaintiff's medical records." (Doc. 9 at 6). That Dr. Dawson assessed restrictions not assessed in Meade's PRFC supports this assertion. (Doc. # 9 at 6; Tr. 324-26, 273-75). Moreover, Dr. Dawson's PRFC assessment indicates that Plaintiff's file included "treating or examining source statement(s)" and that such statements were not "significantly different" from his findings. (Tr. 328). This too suggests that Dr. Dawson's PRFC assessment was based on a comprehensive review of Plaintiff's record and not, as Plaintiff suggests, primarily on SDM Meade's PRFC assessment.

Indeed, the ALJ characterized the PRFC assessments completed by Meade and Dr. Dawson as evidence that "*further* support[s]" the "conclusion that the claimant is not disabled." (Tr. 63) (emphasis added). This reference makes clear that the ALJ did not "rely" on either PRFC assessment to reject Dr. Patel's assessment, but instead viewed them as more evidence of record that undermined Dr. Patel's assessment.

III.   **CONCLUSION**

Because substantial evidence supports the ALJ's RFC determination, and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act,

**IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 8) is **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 9) is **GRANTED**;

4. This matter is **STRICKEN** from the docket; and

5. A separate Judgment affirming this decision will be entered contemporaneously herewith.

This 21st day of June, 2011.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\5-10-205-Adams-MOO.wpd